DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE M. LYONS, et al., ) | |
| ) | |
| Plaintiffs, ) | CASE NO. 5:08 CV 01323 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| CUNA MUTUAL INSURANCE SOCIETY,[1] ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the Court are cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. On February 6, 2009, Defendant CUNA Mutual Insurance Society[1] (CUNA) moved for summary judgment. ECF 17. Plaintiffs opposed CUNA's motion (ECF 19) and CUNA replied. ECF 21.

On March 18, 2009, Plaintiffs filed a cross-motion for summary judgment. ECF 20. Defendant CUNA opposed Plaintiffs' motion (ECF 23) and Plaintiffs replied. ECF 24.

For the reasons discussed *infra*, Defendant's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied.

Also pending before the Court is Plaintiffs' motion to strike the affidavit of William H. Woods, together with Exhibit H and Exhibit I attached thereto, pursuant Fed. R. Civ. P. 12(f). Plaintiffs' motion to strike is granted.

---

[1] The parties have stipulated that Plaintiffs voluntarily dismiss their claims against CUNA Mutual Group. ECF 27.

(5:08 CV 01323)

## I. BACKGROUND

On October 14, 2005, in Portage County, Ohio, decedent Alan L. Lyons suffered fatal injuries while on board a Cessna 172L training plane due to a mid-air collision with another plane. At the time of the mid-air collision, Lyons was instructing another pilot, Christopher Erdovegi, on flying by instrument reading rather than sight. Lyons was instructing for American Winds Flight Academy. The flight lesson was planned to end where it began; at the airport (Akron/Fulton) used by American Winds Flight Academy to give flight instruction.

On September 1, 2001, Alan L. Lyons obtained a group Accidental Death and Dismemberment Insurance Policy from CUNA Mutual Insurance Society. The CUNA Insurance Policy includes the following language:

> While this certificate is in effect, Insured Persons are covered 24 hours a day, 365 days a year against accidents in the course of business or pleasure. Coverage includes (but is not limited to) accidents whether on or off the job, occurring in the home, traveling as a passenger by train, airplane, automobile or other private or public transportation.

In addition, the CUNA Insurance Policy contained the following exclusion:

> EXCLUSIONS. We will not pay a benefit for any Loss to an Insured Person caused by or resulting from:
>
> 4. Air travel as a pilot or crew member.

On November 18, 2005, Christine Lyons, who has fully complied with all terms and conditions of the CUNA Insurance Policy, informed CUNA of Alan L. Lyon's death. On the same date, CUNA sent a letter to Ms. Lyons acknowledging the claim and requesting additional information. CUNA denied coverage based on Exclusion No. 4 of the policy by letter to Ms. Lyons dated February 17, 2006. Collette Hagerdorn, a CUNA claim specialist, prepared the

-2-

(5:08 CV 01323)

letter.  At the time of the denial of coverage, CUNA possessed the Accidental Death Claim Form completed by Christine Lyons, the coroner's report, the death certificate, a document titled "Vital Statistics," Supplemental Medical Certification, and a newspaper article from the Cleveland Plain Dealer about the collision.

On March 17, 2008, Ms. Lyons' counsel sent a letter to CUNA asserting that CUNA's February 17, 2006 denial of the claim was based upon an incorrect legal interpretation of Exclusion No. 4 and that CUNA's alleged error constitutes the tort of bad faith.  CUNA continued to deny the claim and this action was brought by Plaintiffs.

## II. LAW

### A. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(5:08 CV 01323)

(1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.  *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003)  ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

(5:08 CV 01323)

### B. Insurance Contract Interpretation Standard

Under Ohio law, the interpretation of an insurance policy is to be resolved as a matter of law. *See Lager v. Miller-Gonzales*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶¶ 15 & 16; *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, at ¶ 7; *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶¶ 11-14.

"An insurance policy is a contract." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. The terms of a contract "are to be given their plain and ordinary meaning." *Lager v. Miller-Gonzales*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶ 11; *see Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347 (Ohio 1982). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11. "In order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can be placed on the language in question." *Anderson v. Highland House*, 757 N.E.2d 329, 332 (Ohio 2001).

When a contract provision is susceptible to more than one interpretation, the provision "will be construed strictly against the insurer and liberally in favor of the insured." *Lager v. Miller-Gonzales*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶ 15. This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy. *Morfoot v. Stake*, 190 N.E.2d 573 (Ohio 1963). In sum, courts are not permitted to

(5:08 CV 01323)

create ambiguity in a contract where there is none.  *See generally Lager v. Miller-Gonzales*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666; *Hacker v. Dickman*, 661 N.E.2d 1005 (Ohio 1996).

### III.  ANALYSIS

**A. The text of Exclusion No. 4 of Alan L. Lyons' CUNA Insurance Policy is clear and unambiguous.**

The parties do not dispute that: (1) had Alan Lyons' flight not been involved in a mid-air collision, the departure and return location would have been the same, (2) Lyons was acting as a flight instructor at the time of the mid-air collision, and (3) CUNA denied coverage based on Exclusion No. 4 of the Insurance Policy:

> EXCLUSIONS.  We will not pay a benefit for any Loss to an Insured Person caused by or resulting from:
>
> 4. Air travel as a pilot or crew member.

**1. Alan L. Lyons was a "pilot" or "crew member" at the time of the mid-air collision.**

The Ohio Rev. Code provides that a flight instructor is designated the "pilot-in-command" of an aircraft while engaged in instruction.  "[T]he occupant of the airplane possessed of an instructor's rating is rebuttably presumed to be the pilot-in-command when any part of the flight is for the purpose of instructing another in any phase of flying or navigating." Ohio Rev. Code § 4561.23.

Plaintiffs admit that Alan Lyons was the flight instructor of the aircraft at the time of the collision.  Under the Ohio Rev. Code, because Lyons was acting as a flight instructor, he was

(5:08 CV 01323)

also acting as the pilot-in-command.

Plaintiffs do not contest in their briefs that Alan Lyons was a pilot under Exclusion No. 4. Moreover, during a June 8, 2009 oral argument on the motions, the Court asked Plaintiffs' counsel if there is a dispute that Mr. Lyons was a pilot or crew member at the time of the accident. Plaintiffs' counsel responded by saying, "there is no dispute that he was a pilot." Based on the Ohio Rev. Code and the positions of the parties, the Court concludes that there is no material fact in dispute that Lyons was a pilot.

**2. Alan L. Lyons was engaged in "air travel" at the time of the mid-air collision.**

Having found that Lyons was a "pilot or crew member" within the meaning of Exclusion No. 4, the applicability of Exclusion No. 4 depends on whether Mr. Lyons was engaged in "air travel."

At the time of the collision, Mr. Lyons was instructing student pilot Christopher Erdovegi for American Winds Flight Academy. The flight lesson was intended to end where it began; the airport (Akron/Fulton) used by American Winds Flight Academy to give flight instruction. Plaintiffs argue that "air travel" occurs only when the starting place and ending place are different, while CUNA contends that "air travel" does not require the starting place and ending place of a flight to be different in order to constitute "air travel."

Plaintiffs are correct to point out that the first definition of "travel" listed in *Webster's New World Dictionary of American English* is "to go from one place to another; to make a journey or journeys." Based on this definition, Plaintiffs contend that "air travel" occurs only

-7-

(5:08 CV 01323)

when the starting place and ending place are different, and because the flight's intended starting and ending location was the same, Lyons was not engaged in "air travel" at the time of the collision.  However, placing such a narrow construction on the meaning of "air travel" does not attribute to those terms their plain and ordinary meaning as required by law.  *Lager v. Miller-Gonzales*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶ 11; *see Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347 (Ohio 1982).

> The *Merriam-Webster Online Dictionary* defines "travel"as follows:
>
> 1 a: to go on or as if on a trip or tour : journey b (1): to go as if by traveling : pass <the news traveled fast> (2): associate <travels with a sophisticated crowd> c: to go from place to place as a sales representative or business agent
>
> 2 a (1): to move or undergo transmission from one place to another <goods traveling by plane> (2): to withstand relocation successfully <a dish that travels well> b: to move in a given direction or path or through a given distance <the stylus travels in a groove> c: to move rapidly <a car that can really travel>
>
> 3: to take more steps while holding a basketball than the rules allow
>
> transitive verb
>
> 1 a: to journey through or over b: to follow (a course or path) as if by traveling
>
> 2: to traverse (a specified distance)
>
> 3: to cover (an area) as a commercial traveler

Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/travel.

> Additionally, the *Random House Dictionary* defines travel as follows:
>
> –verb (used without object)
>
> 1. to go from one place to another, as by car, train, plane, or ship; take a trip; journey: to travel for pleasure.
>
> 2. to move or go from one place or point to another.
>
> 3. to proceed or advance in any way.
>
> 4. to go from place to place as a representative of a business firm.
>
> 5. to associate or consort: He travels in a wealthy crowd.

-8-

(5:08 CV 01323)

  6. Informal. to move with speed.
  7. to pass, or be transmitted, as light or sound.
  8. Basketball. walk (def. 9).
  9. to move in a fixed course, as a piece of mechanism.

Dictionary.com Unabridged (v 1.1). Random, House, Inc., http://dictionary.reference.com/browse/travel.

  The dictionary definition of "travel" contains many variations. However, common to each definition of "travel" is the concept of "going" or "moving." In the *Random House Dictionary*, as long as a person or object is "proceed[ing] or advanc[ing] in any way," that constitutes "travel." Like the list of definitions of "travel" in *Webster*, the definitions listed in the *Random House Dictionary* are synonymous with the act of "going" or "moving." Accordingly, despite the fact that Alan Lyons' flight was intended to depart and return to the same location, Alan Lyons' flight was proceeding or advancing (going and moving) through the air and that constitutes "air travel."

  **B. CUNA properly denied coverage based on Exclusion No. 4.**

  "In order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can be placed on the language in question." *Anderson v. Highland House*, 757 N.E.2d 329, 332 (Ohio 2001). In this case, the only reasonable interpretation of "air travel" is one that encompasses a flight going, moving, proceeding, or advancing through the air.

  When a contract provision is susceptible to more than one interpretation, the provision "will be construed strictly against the insurer and liberally in favor of the insured." *Lager v.*

(5:08 CV 01323)

*Miller-Gonzales*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶ 15.  This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy.  *Morfoot v. Stake*, 190 N.E.2d 573 (Ohio 1963).  As a result, the CUNA Insurance Policy is not susceptible to a limited interpretation that restricts "air travel" to instances where the starting place and ending place are different.

In *Trishman v. J. C. Penney Cas. Ins. Co.*, 374 N.E.2d 651 (Ohio Ct. App. 1977), the meaning of the word "training" in an insurance policy exclusion clause within the context of air pilot training was held to be clear and unambiguous, even though "training" can be defined more than one way.  In *Trishman*, the Plaintiff argued that "training" should be restricted to "training by doing" and preclude "training by observation" as being within the exception clause.  *Trishman*, 374 N.E.2d at 654.  However, the court held that "within the ordinary meaning of the word "training," it may be accomplished either by observation, verbal instruction, or doing, or a combination of these."  *Trishman*, 374 N.E.2d at 654.  Like the word "training" in *Trishman*, within the ordinary meaning of  "air travel," it may be accomplished by going, moving, proceeding, or advancing, or a combination of these.

**C. Defendant is entitled to judgment on the Plaintiffs' bad faith claim as a matter of law.**

Defendant has also moved for summary judgment on Plaintiffs' bad faith claim. Plaintiffs contend that even where an insurance company's refusal to pay a claim of its insured is ultimately upheld, if that insurer has failed to exercise its duty of good faith in the processing of the claim of the insured, a cognizable claim for bad faith results.  However, the case law does not

-10-

(5:08 CV 01323)

support this assertion.  Moreover, during a June 8, 2009 oral argument on the motions, the Court asked Plaintiffs' counsel if the Supreme Court of Ohio has said in any case that a claim without merit can still give rise to a bad faith claim on the part of the insurance company.  Plaintiffs' counsel responded, "I'm not aware of any case that holds that, no."

"To withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim**."** *Tockles & Son, Inc. V. Midwestern Indemnity* Co., 605 N.E. 2d. 936, 943 (Ohio 1992); Vogias *v. Ohio Farmers Ins. Co.*, 894 N.E. 2d 1265, 1271 (Ohio Ct. App. 2008).  In this case, Plaintiffs do not offer any evidence to oppose CUNA's motion for summary judgment on the bad faith claim because under the clear and unambiguous language of Exclusion No. 4, the Court has determined that no coverage exists as a matter of law.  Therefore, Exclusion No. 4 provides reasonable justification for CUNA's refusal of Plaintiffs' claim and Defendant CUNA is entitled to judgment as a matter of law on Plaintiffs' bad faith claim.

### D. Plaintiffs' motion to strike the affidavit of William H. Woods, together with Exhibit H and Exhibit I attached thereto, pursuant Fed. R. Civ. P. 12(f), is granted.

The Court did not utilize any information contained in the affidavit of William H. Woods in ruling on the parties' cross motions for summary judgment. Therefore, the motion is moot and Plaintiffs' motion to strike is granted on that basis.

(5:08 CV 01323)

## IV. CONCLUSION

Exclusion No. 4 of decedent Alan Lyons' CUNA Insurance Policy states: "We will not pay a benefit for any loss to an insured person caused by or resulting from air travel as a pilot or crew member." "An insurance policy is a contract." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. The terms of a contract "are to be given their plain and ordinary meaning." *Lager v. Miller-Gonzales*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶ 11; *see Gomolka*, 436 N.E.2d 1347. Within the ordinary meaning of "air travel," it may be accomplished by going, moving, proceeding, or advancing, or a combination of these.

At the time Mr. Lyons' Cessna was involved in a mid-air collision with another plane resulting in his death, Mr. Lyons was a "pilot" engaged in "air travel" within the meaning of the CUNA Insurance Policy. As a result, Christine Lyons' claim is excluded from coverage and Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is granted. Plaintiffs' motion for summary judgment is denied.

IT IS SO ORDERED.

07/16/09  *s/ David D. Dowd, Jr.*
Date  David D. Dowd, Jr.
 U.S. District Judge